AO 91 (Rev. 11/11) Criminal Complaint

FILED
6/30/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
TD

AUSA Anthony Chmura (312) 469-6049

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. : **26CR358** |
| v. | Reference No. : 2026R00750 |
| RISHONE RASPBERRY | **UNDER SEAL** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about May 27, 2026, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) | Knowingly and intentionally distributed a controlled substance, namely 40 grams or more of a mixture and substance containing fentanyl, in violation of Title 21, United States Code, Section 841(a)(1) |

This criminal complaint is based upon these facts:

 X  Continued on the attached sheet.

MATTHEW D. MOORE
Task Force Officer, Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: June 30, 2026

*Judge's signature*
box SIGN      4Q93KYRV-4Y3KZ2KQ

City and state: Chicago, Illinois

LAURA K. McNALLY, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Matthew D. Moore, being duly sworn, hereby depose and state as follows:

1. I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") and have been so employed since approximately April 2023. I am currently assigned to the ATF's Chicago Field Division, and my responsibilities include the investigation of federal firearms and narcotics related offenses. I have been employed by the Chicago Police Department for the past 13 years, with over 8 years of experience investigating gangs, firearms, and narcotics offenses.

2. As part of my duties as an ATF Task Force Officer, I investigate criminal violations relating to money laundering and narcotics trafficking offenses, including criminal violations of the federal controlled substance laws, including, but not limited to Title 18, United States Code, Sections 1956 and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved with various electronic surveillance methods and the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

3. I have received training in the area of narcotics investigations, money laundering, financial investigations, and various methods used by drug dealers in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of narcotics laws.

4. I have participated in investigations that have led to the issuance of search warrants involving violations of narcotic laws. These warrants involved the

search of locations including: residences of targets, their associates and relatives; "stash houses" (houses used as drug/money storage locations); storage facilities; bank safety deposit boxes; cellular/camera phones; and computers. The evidence searched for and recovered in these locations has included controlled substances, records pertaining to expenditures and profits, monetary instruments, and various assets that were purchased with the proceeds of the drug trafficking activity.

5. My responsibilities also include the investigation of violations of law as they relate to federal firearms offenses, including the unlawful possession of firearms or ammunition by convicted felons, firearms trafficking, violent crime, and their use in narcotics trafficking. I employ investigative tools such as the use of informants and witnesses, surveillance, controlled purchases of firearms and narcotics, firearms traces, telephone toll analysis, and the execution of both search warrants and arrests warrants. I have participated in the execution of multiple federal search warrants related to federal firearms offenses, along with dozens of state search warrants throughout my career.

6. This affidavit is submitted in support of a criminal complaint alleging that RISHONE RASPBERRY ("RASPBERRY") has violated Title 21, United States Code, Section 841(a).

7. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging RASPBERRY with distributing 40 grams or more of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1), I have not included each and every fact known

to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

8. This affidavit is based on my personal knowledge, my training and experience, my review of audio and/or video recorded conversations, law enforcement records, and court documents, as well as information provided to me by other law enforcement agents and other individuals.

## FACTS ESTABLISHING PROBABLE CAUSE

### A. Summary of Investigation

9. On approximately May 23, 2026, an ATF confidential source CS-1[1] identified RASPBERRY[2] as a narcotics trafficker who operated in the area of South Cicero Ave and West Polk Street in Chicago, Illinois. Specifically, CS-1 told law enforcement that an individual known to CS-1 as "SOSA" later identified by law enforcement as RASPBERRY, was offering to sell quantities of fentanyl.

---

[1] CS-1 is a documented confidential informant with the ATF, and has provided information to law enforcement in the past which has been corroborated through controlled purchases of narcotics and firearms. The information that CS-1 has been deemed to be reliable by the totality of the investigation to date because it has been corroborated in significant respects by surveillance, and other information described in this affidavit. The information provided by CS-1 has never been found to be false or misleading to date. CS-1 is a convicted felon with two felony convictions to include a federal firearm and narcotics conviction. CS-1 has been working with the ATF for financial compensation since 2016, and over the past ten years to the date of this affidavit, CS-1 has been paid approximately $109,000. Specifically, for the month of May 2026 and during this investigation CS-1 has been paid approximately $5,600.

[2] Law enforcement displayed an unlabeled Chicago Police Department ("CPD") booking photograph of RASPBERRY to CS-1, who positively identified RASPBERRY as the same individual he/she knows as "SOSA" residing in Chicago, Illinois.

10.     On or about May 23, 2026, at the direction of law enforcement, CS-1 met RASPBERRY in the vicinity of Business A located on the 700 block of South Cicero Avenue in Chicago near the intersection of South Cicero Avenue and West Polk Street.  According to CS-1 relayed to law enforcement officials that RASPBERRY sells quantities of fentanyl in and around the area of Business A, and that RASPBERRY offered to sell ounce-level quantities of fentanyl to CS-1 for $1,000 an ounce. During the meeting with CS-1, RASPBERRY identified his telephone number as 872***-8888 (the "RASPBERRY Phone").[3]

11.     Thereafter, as described below, on approximately May 27, 2026, law enforcement conducted a controlled purchase of approximately two ounces (52.12 grams) of fentanyl from RASPBERRY in the vicinity of Business A.

**B.      On Approximately May 27, 2026, RASPBERRY Distributed Approximately 52 grams of Fentanyl**

12.     Between approximately May 23, 2026, and May 27, 2026, under the direction of law enforcement, CS-1 conducted a recorded telephone call and exchanged several text messages with RASPBERRY over the RASPBERRY Phone.

---

[3] The identification of RASPBERRY, and RASPBERRY as the user of the RASPBERRY Phone, is based in part, on the following: (1) on or about May 23, 2026, RASPBERRY identified his telephone number to CS-1 as the call number of the RASPBERRY Phone; (2) from approximately May 23, 2026, to May 27, 2026, CS-1 communicated with a person over the RASPBERRY Phone about completing a drug transaction on May 27, 2026, and RASPBERRY appeared at Business A to complete the drug transaction on the agreed-upon date and location discussed over the RASPBERRY Phone; (3) law enforcement positively identified RASPBERRY as the person who met with the UCA on May 27, 2026, to distribute approximately 51 grams of fentanyl. Based on law enforcement's review of a known photograph of RASPBERRY contained in CPD records and a comparison of that photograph to the person interacting with the UCA on May 27, 2026; and (4) during the May 27, 2026, fentanyl transaction with UCA, RASPBERRY self-identified his telephone number as the call number of the RASPBERRY Phone.

CS-1 exchanged a series of recorded text messages with RASBERRY. Specifically, on May 24, 2026, CS-1 informed RASPBERRY that CS-1's "cousin" (referring to an undercover law enforcement official ("UCA"), wanted to purchase two (2) ounces of fentanyl. On May 26, 2026, during a recorded telephone call RASPBERRY agreed to sell two (2) ounces of fentanyl for $2,000 and agreed to meet on May 27, 2026, in the vicinity of Business A to conduct the transaction.

13. On or about May 27, 2026, at approximately 1:31 p.m., the UCA, was equipped with audio and video recording devices and a transmitter. The UCA, accompanied by CS-1 and a second confidential source ("CS-2")[4], then traveled in the UCA's vehicle ("UCV") to the vicinity of Business A parked in the area of the 4700 block of West Polk Street in Chicago. Upon arriving at the location, CS-1 attempted to contact RASPBERRY via the RASPBERRY Phone. While CS-1 attempted to contact RASPBERRY, a female ("Individual A"), made contact with the UCA through the front driver side window of the UCV, and identified herself as RASPBERRY's girlfriend. Individual A then advised the UCA that RASPBERRY was coming down to meet with the UCA, and she instructed the UCA to move the UCA vehicle to the parking lot of Business A, located on the 700 block of South Cicero Avenue in Chicago.

14. At approximately 1:43 p.m., the UCA moved the UCV to the north side of the parking lot of Business A. Upon parking at Business A, the UCA observed

---

[4] CS-2 is a documented confidential informant with the ATF and has provided information to law enforcement in the past which has been corroborated through controlled purchases of narcotics and firearms. CS-2 has been convicted of two narcotics related charges. CS-2 is working with ATF for financial compensation since 2018 though he / she was deactivated for a portion of that time due to inactivity. ATF re-activated CS-2 in 2025. CS-2 to date has been paid approximately $12, 250.

multiple unidentified males position themselves around the UCV in the parking lot. The UCA observed RASPBERRY approach from the south side of Business A's parking lot and walk towards the front passenger seat of the UCV. CS-1 exited the front passenger seat and walked to the front of the UCV, while CS-2 remained seated in the rear passenger seat of the UCV.

15. RASPBERRY then entered the front passenger seat of the UCV and identified himself to UCA as "SOSA". RASPBERRY then removed a clear plastic bag containing a white-colored substance of suspected fentanyl from his waistband. The UCA then took out a scale and weighed the suspected fentanyl which the UCA observed showed an approximate weight of 52 grams (*Figure 1*). The UCA then confirmed that RASPBERRY wanted $2,000 for the two (2) ounces of suspected fentanyl, and RASPBERRY confirmed "two even". The UCA provided RASPBERRY with $2,000 in prerecorded investigative funds in exchange for the suspected fentanyl (*Figure 2*). The still-images of the video of the narcotics transaction between RASPBERRY and the UCA is depicted below:



*Figure 1*



*Figure 2*

16.     While meeting with the UCA, RASPBERRY supplied the UCA with the phone number of the RASPBERRY Phone (872***-8888) for the UCA to contact him in the future.  RASPBERRY instructed the UCA to use FACETIME when calling to discuss the purchase of fentanyl.  RASPBERRY then exited the front passenger seat of the UCV, and CS-1 re-entered the front passenger seat of the UCV.  The UCA, accompanied by CS-1 and CS-2, then departed the area in the UCV.

17.     Law enforcement submitted the white-colored substance distributed by RASPBERRY to the DEA laboratory for testing. According to the DEA laboratory, the substance had a net weight of 51 grams and tested positive for the presence of fentanyl.

## CONCLUSION

18.     Based on the foregoing, I respectfully submit that there is probable cause to believe that on or about May 27, 2026, RISHONE RASPBERRY did knowingly and intentionally distribute a controlled substance, namely, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

.

FURTHER AFFIANT SAYETH NOT.

MATTHEW D. MOORE
Task Force Officer, Bureau of Alcohol,
Tobacco Firearms & Explosives (ATF)

SWORN TO AND AFFIRMED by telephone June 30, 2026

Honorable LAURA K. McNALLY
United States Magistrate Judge